IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-3469-WJM-SKC

LESLIE SHANNON,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
DARLA THOMPSON,
SCOTT SIEGFRIED,
KEVIN WATANABE,
CHERRY CREEK SCHOOL DISTRICT BOARD OF EDUCATION, and
TY VALENTINE,

    Defendants.

---

## ORDER ADOPTING JULY 12, 2022 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the July 12, 2022 Report and Recommendation of United States Magistrate Judge S. Kato Crews (the "Recommendation") (ECF No. 98) that the Court grant Defendants Cherry Creek School District, Darla Thompson, Scott Siegfried, Kevin Watanabe, Cherry Creek School District Board of Education, and Ty Valentine's (collectively, "Defendants") Motion for Summary Judgment (ECF No. 75). The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Plaintiff filed an objection to the Recommendation ("Objection") (ECF No. 103), to which Defendants responded ("Response") (ECF No. 106). For the reasons set forth below, Plaintiffs' Objection is overruled and the Recommendation is adopted in its

entirety.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this action and reproduces only the facts pertinent to this ruling.

**A.    Lawsuit**

Plaintiff, a black female educator, was employed as a Science, Technology, Engineering, and Math ("STEM") instructor at Highline Elementary ("Highline") in the Cherry Creek School District ("District"). (ECF No. 98 at 3.) This lawsuit arises out of the District's non-renewal of her teaching contract at the end of the 2018–2019 academic year. (*Id.*)

Plaintiff brings three claims for relief. First, she claims she was subjected to discrimination and a hostile work environment because of Highline's equity training programs. (*Id.* at 4.) Second, she claims Defendants wrongfully terminated her employment and defamed her character in retaliation for her complaints over the training. (*Id.*) Third, she alleges retaliation, defamation of character, and tortious interference based on an employment reference Highland's principal, Darla Thompson ("Thompson"), provided to a prospective employer of Plaintiff. (*Id.*)

Plaintiff brings her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1). She also brings a Section 1981 claim (by way of Section 1983) based on post-contract formation discrimination and retaliation. Her state law claims arise under the Colorado Anti-discrimination Act, and include state common law claims for defamation and tortious interference. (*Id.*) In addition to suing the District and Thompson, Plaintiff asserts her claims variously against the Cherry Creek School District Board of Education ("Board"), the District's

2

Superintendent Scott Siegfried, its Director of Human Resources Ty Valentine, and Highline's Assistant Principal Kevin Watanabe. (*Id.*)

**B.      Recommendation**

1.      <u>Claims Against the Board and District Are Redundant</u>

In the Recommendation, the Magistrate Judge recommended that the Court grant summary judgment as to the Board because a suit against the District and its Board of Directors is redundant—the District encompasses the Board. (*Id.* at 17.)

2.      <u>Title VII and Section 1981</u>

a.      *No Prima Facie Case of Race Discrimination Presented*

Next, the Magistrate Judge recommended that the Court grant summary judgment in Defendants' favor because Plaintiff failed to demonstrate a genuine issue of material fact as to the second and third elements of her prima facie case of race discrimination.  To establish a prima facie case of race discrimination under Title VII, Plaintiff must show: "(1) [s]he is a member of a racial minority; (2) [s]he suffered an adverse employment action; and (3) similarly situated employees were treated differently." *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).  Further, a plaintiff must show racial animus to support a discrimination claim under Section 1981.  *Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir. 1992) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

Plaintiff asserted as evidence of discrimination the fact that she was hired on a three-year probationary status and that Thompson called her "loud" and "argumentative."  (*Id.* at 20–21.)  The Magistrate Judge concluded that the hiring of Plaintiff on a three-year probationary period is required under Colorado law, Colorado Revised Statutes § 22-63-203(2(a), and that Plaintiff failed to identify a similarly situated

3

individual outside her protected class who was hired without probationary status. (*Id.*) Additionally, the Magistrate Judge concluded that Plaintiff failed to present competent evidence that her interaction with Thompson rose to the level of an adverse employment action. (*Id.* at 21.)

        b.    *No Evidence of Pretext for Race Discrimination*

Even assuming Plaintiff had met her prima facie burden to demonstrate race discrimination in connection with the non-renewal of her contract, the Magistrate Judge found that Plaintiff failed to present competent evidence that Defendants' proffered non-discriminatory reason for the non-renewal of her contract was pretextual. (*Id.* at 21–22.) Construing the facts in Plaintiff's favor, the Magistrate Judge stated that the facts demonstrated that the District experienced and maintained concerns over Plaintiff's job performance during all three years of her probation. (*Id.* at 22 (quoting numerous examples of the District's concerns with Plaintiff's performance).)

Although Plaintiff attempted to refute the numerous examples of the District's concerns regarding her performance by claiming she was unaware of the performance issues, the Magistrate Judge determined that Plaintiff's deposition testimony suggested that she was in fact aware of the District's dissatisfaction with her performance at least after her first-year interview. (*Id.* at 23.) And regardless of whether she was aware, the Magistrate Judge observed that the undisputed evidence showed that the District was concerned with Plaintiff's job performance throughout her probationary period. (*Id.*) While Plaintiff also asserted that it was discriminatory for the District to select the "other" option as the reason for non-renewal, as opposed to the "ineffective performance" option, the Magistrate Judge explained that it was the District's practice to do so in this type of situation. (*Id.* at 23–24.)

4

     c. *No Genuine Dispute of Material Fact as to the Fourth Element of Prima Facie Case for Hostile Work Environment Claim*

  To meet the prima facie burden with respect to a hostile work environment claim, Plaintiff must show: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of her employment and created an abusive working environment.  *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).

  The Magistrate Judge rejected Plaintiff's arguments that Highline's monthly, Pacific Educational Group ("PEG") equity trainings promoted "white privilege" and focused on "typical negative stereotypes of Black people."  (ECF No. 98 at 25.)  Although Plaintiff considered the trainings unwelcome harassment, the Magistrate Judge highlighted that the fourth element's standard "has both subjective and objective components."  (*Id.*)  He reiterated that it "is not enough that a plaintiff deems the work environment hostile."  (*Id.*)  Rather, it must be "so permeated with discriminatory intimidation, ridicule, and insult that a reasonable person under the same or similar circumstances would deem it hostile."  (*Id.* (internal quotation marks and citation omitted).)

  After a totality of the circumstances analysis, the Magistrate Judge concluded that no reasonable jury could find that Plaintiff met her burden; though she might have felt offended by the trainings, she proffered no competent evidence on the severity or pervasiveness of the discussions, or evidence that the content of the trainings included elements of discriminatory intimidation, ridicule, or insults.  (*Id.* at 26.)  Plaintiff also

5

failed to proffer evidence to support her contention that the trainings focused on typical negative stereotypes of Black people.  (*Id.*)

        d.     *No Evidence of Pretext for Retaliation*

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Robinson v. Dean Foods Co.*, 654 F. Supp. 2d 1268, 1282–83 (D. Colo. 2009).

In December 2018, Plaintiff met with Watanabe and told him about her concerns over the PEG equity-focused meetings, explained she did not like the large group format of the meetings, and told him about an argument she had with Thompson in which Plaintiff states that Thompson promoted negative stereotypes about Black women when she described Plaintiff as "angry" and "argumentative."  (ECF No. 98 at 8.)  Plaintiff asserts her "courageous conversations" with Watanabe were protected activity, and the District retaliated against her for those conversations by not renewing her contract and by Thompson's subsequent, negative reference to a prospective employer. (*Id.* at 27.)

Despite these assertions, the Magistrate Judge determined that Plaintiff failed to demonstrate that a causal connection exists between these conversations and Thompson's non-renewal decision four months later.  (*Id.*)  The undisputed evidence is that Watanabe did not share these "courageous conversations" with Thompson, who made the initial non-renewal decision.

Regarding the reference call between Thompson and Aurora Public Schools ("APS") about Plaintiff, Plaintiff admits that Thompson told APS the truth about her

absences and that she failed to submit required goals for the year. (*Id.* at 28.) The Magistrate Judge found that other than conclusory statements characterizing Thompson's reference as having been given "with malicious intent," Plaintiff failed to show that a genuine issue of material fact exists that the reference was given in retaliation for Plaintiff's conversations with Watanabe. (*Id.*) Thus, based on the undisputed material facts, Defendants were entitled to summary judgment on Plaintiff's retaliation claim, as no reasonable jury could conclude the District's or Thompson's actions in not renewing Plaintiff's contract and in providing the employment reference to APS were done in retaliation for any protected activity Plaintiff may have engaged in. (*Id.*)

**C.     Section 1981**

    1.     <u>No Genuine Dispute of Material Fact as to Prima Facie Case Against Individual Defendants</u>

Section 1981 holds individual defendants liable when they are personally involved in the alleged racial or ethnic discrimination, or where an affirmative link exists to connect their individual conduct to the alleged discrimination. *Howard v. Okla. Dep't of Corr.*, 247 F. Supp. 3d 1210, 1226–27 (W.D. Okla. 2017). The Magistrate Judge explained that he considered each of Defendant's actions, individually and in combination, to determine whether the undisputed material facts support Plaintiff's required elements of proof. (ECF No. 98 at 29.) Because he found no reasonable jury could conclude that any one of Defendant's actions, individually or in combination with other Defendants, supports Plaintiff's Title VII claims, he also found that no individual Defendant's actions support Plaintiff's Section 1981 claims either, and recommended dismissal of those claims. (*Id.*)

7

2. <u>Monell Claims</u>

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 556, 676 (2009) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978)). To establish municipal liability under *Monell*, a plaintiff must show: (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Based on the Magistrate Judge's recommendation that no reasonable jury could conclude any individual Defendant violated Section 1981, he also found that Plaintiff's *Monell* claim against the District necessarily fails. (ECF No. 98 at 30 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736–37 (1989)).)

**D.     State Law Claims**

Because he recommended that the Court grant summary judgment in Defendants' favor on all of Plaintiff's federal claims, the Magistrate Judge found that there is "no[t] a compelling reason to maintain jurisdiction over the state claims[.]"  (ECF No. 98 at 30.)  *See Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.").

## II. STANDARD OF REVIEW

**A.     Review of a *Pro Se* Plaintiff's Pleadings**

The Court must construe a *pro se* plaintiff's pleadings "liberally"—that is, "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  It is not, however, "the proper function of the

district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

**B.    Rule 72(b) Review of a Magistrate Judge's Recommendation**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 73(b)(3).  An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

In the absence of a timely and specific objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

**C.    Summary Judgment**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### III. ANALYSIS

Plaintiff's Objection is somewhat rambling, making it difficult to identify what specific portions of the Recommendation to which she objects; rather, she appears to object to most (if not all) of the Magistrate Judge's recommendations and attempts to

support those objections with lengthy recitations of "facts" which she believes demonstrate a genuine dispute of material fact exists for all claims. (*Id.*) Nevertheless, the Court has reviewed the Objection and Response and for the following reasons, adopts the Recommendation in full.

A.  **Plaintiff's Requests that the Court Review Portions of the Record**

At various points in the Objection, Plaintiff asks that the Court "review" or "reexamine" portions of the record because she argues that if the Court does so, the outcome would be in her favor. (*See, e.g.*, ECF No. 103 at 3, 6, 7, 12.) The Court finds that many of these requests are not specific objections to the Recommendation but are merely a request that the Court review the entire record or at least large portions of it. To the extent Plaintiff has raised a specific objection, the Court will review the Recommendation *de novo*; however, to the extent her objections are more general, the Court will review the Recommendation for clear error.

B.  **Liberal Construal of Plaintiff's Filings and Submissions**

In the Recommendation, the Magistrate Judge stated that he construed Plaintiff's filings and related submissions liberally because she is not an attorney. (ECF No. 98 at 3.) Further, he stated that despite the liberal construction, he may not construct arguments or legal theories for her in the absence of reference to those issues in her filings. (*Id.*)

In the Objection, Plaintiff objects to the "Court[']s conclusion of [her] filings and related submissions as merely liberal construction." (ECF No. 103 at 2.) The Court concludes that Plaintiff has misunderstood the meaning of the Magistrate Judge's words, which were a recitation of the summary judgment standard and the requirements a judge abides by in considering documents submitted by a *pro se* party.

11

To the extent Plaintiff objects to the Magistrate Judge's recitation of the legal standards in this case, the Court overrules that objection.

### C.     Claims Against the Board

Plaintiff appears to misunderstand the redundancy of her claims against the District and the Board, arguing that the Board is "management" and can be sued. (ECF No. 103 at 11–12.) The Court finds that the Magistrate Judge correctly analyzed this issue and found that the Board is not a proper defendant in this case. *See Roe v. Karval Sch. Dist. RE23*, 2013 WL 1858464, at *7 (D. Colo. May 2, 2013). Therefore, this objection is overruled.

### D.     Claims of Race Discrimination

Next, the Court addresses Plaintiff's objections to the Magistrate Judge's recommendation that her race discrimination, hostile work environment, and retaliation claims fail. It appears as though Plaintiff objects to the fact that she believes Defendants discriminated against her by "not putting [her] on an improvement plan to provide a means of correcting the alleged work deficiencies, while other teachers were placed on improvement plans,"[1] failing to provide documented complaints from parents or students, and failing to maintain her confidentiality regarding the concerns she raised with Watanabe in her mid-year review conversation. (ECF No. 103 at 5–6.) She states the work environment was "segregated," and she also appears to state that Thompson held "subjective" views of her performance. (*Id.*) She also notes: "Respectfully this should have raised questions from the Courts."[2] (*Id.* at 5.)

---

[1] Plaintiff cites no evidence or case law to support this statement. (ECF No. 103 at 5.)

[2] To the extent this sentence is an objection, it is not specific enough to require *de novo*

12

Despite these objections and her more general claims that her teaching contract was not renewed because of her race, Plaintiff acknowledges that in her first-year evaluation, Thompson expressed concerns about her performance (*id.* at 7–8), and in her second-year evaluation, her evaluator, Michelle Colton, had similar concerns about her performance (*id.*).  Additionally, in the Recommendation, the Magistrate Judge recounted that in her deposition, Plaintiff asked whether she should look for a new job, suggesting that she was aware of the District's concerns about her performance after her first year.  (ECF No. 98 at 23.)

With respect to Plaintiff's assertion that the District failed to provide a performance improvement plan or letter of warning, Defendants point out that her argument has no basis in the law; to the contrary, Colorado law provides that a probationary teacher may be nonrenewed for any reason.  (ECF No. 106 at 4 (citing C.R.S. § 22-63-203(4)(a)).)  There is no requirement that a probationary teacher receive a performance improvement plan or written warning before nonrenewal, nor is there a requirement that a probationary teacher be provided with an opportunity to improve.  (*Id.*)  Nonetheless, the Magistrate Judge correctly concluded that even though there is no requirement that it do so, the District provided Plaintiff with multiple opportunities to improve because it renewed her contract twice and only decided to nonrenew at the end of her third probationary year.

The Court also finds Plaintiff's objections to the decision to select "other" instead of "performance" as the reason for nonrenewal are without merit.  The selection was not

---

review.

pretextual; the evidence shows that Human Resources' recommendations guided the decision to select "other," and Plaintiff failed to produce evidence to refute the proffered reasoning for the selection.  (ECF No. 98 at 23.)  Therefore, the Court finds that the conclusion in the Recommendation that selecting "other" was not pretextual was proper.

As the Magistrate Judge observed in the Recommendation, the undersigned also concludes that Plaintiff fails to cite admissible evidence to support her contention that the District did not have performance concerns that led to her nonrenewal.  Instead, Plaintiff's objections are based on her own subjective beliefs, which the Tenth Circuit has found to be insufficient on summary judgment.  *See Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 (10th Cir. 1997); *Furr v. Seagate Tech. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("[I]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").  Like the Magistrate Judge found in the Recommendation, the Court finds that Plaintiff did not produce competent, admissible evidence that the reasons for her nonrenewal were pretextual.  Therefore, the Court overrules her objections concerning her claims of race discrimination.

**E.    Hostile Work Environment**

It appears as though Plaintiff argues she was subjected to a hostile work environment because Thompson's alleged verbal assault of Plaintiff as "loud, angry, and argumentative" was a racial stereotype of Black women and because the PEG trainings and materials presented were discriminatory.[3]  (ECF No. 103 at 3, 11.)  It is

---

[3] In the Response, Defendants also consider that Plaintiff asserts that Highline's production of an allegedly inappropriate musical for Black History Month constituted a hostile work environment.  (ECF No. 106 at 6.)  The Court cannot find specific objections regarding the

not clear from the Objection that Plaintiff objects to any specific portion of the Recommendation. In fact, Defendants state in their Response that "Shannon fails to address the recommendation [concerning her hostile work environment claim] in her objections." (ECF No. 106 at 7.) Rather, Defendants state that all Plaintiff does is assert the conclusory allegation that PEG and Highline equity trainings violated District Policy AC-R-6 and asks the Court to review said document, but does not assert that the Magistrate Judge's determination that the trainings were not evidence of a hostile work environment was incorrect. (*Id.* (citing ECF No. 103 at 12).) The Court agrees with Defendants and thus reviews the recommendations of the Magistrate Judge concerning the hostile work environment claim for clear error.

A pervasively hostile work environment is not established "by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). "Instead, there must be a steady barrage of opprobrious racial comments." *Id.* "[I]t is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Lounds*, 812 F.3d at 1222.

In the Recommendation, the Magistrate Judge considered these same circumstances and arguments and concluded that although Plaintiff perceived her work environment to be hostile because of her race, she failed to show that it was objectively hostile, severe, or pervasive, and that it altered the terms and conditions of her employment. (ECF No. 98 at 25.) The Court agrees with the findings in the

musical in the Objection.

15

Recommendation. While Plaintiff may have been offended by or uncomfortable with the trainings, Thompson's comments, and the musical, as the Magistrate Judge determined, these incidents did not constitute "intimidation, ridicule, or insults." (ECF No. 98 at 26.) The undisputed evidence demonstrates that the equity trainings adhere to the policy designed to promote workplace equity and nondiscrimination. (*See* ECF No. 75 ¶¶ 5–8.)

Therefore, the Court overrules the Objection with respect to Plaintiff's hostile work environment claim.

**F.     Retaliation**

Plaintiff failed to object to any specific conclusion in the Recommendation with respect to her retaliation claim. (ECF No. 103 at 6, 10–11.) Moreover, she appears to confuse "adverse actions" with "protected opposition to discrimination." (*Id.*) Regardless, the Court liberally construes her Objection to mean that she objects to the Magistrate Judge's conclusion that Thompson's reference to APS and her nonrenewal were not in retaliation for her speaking to Watanabe about the equity trainings in December 2018 and the musical in February 2019[4] (the "courageous conversations").

First, the Court agrees with the Magistrate Judge's conclusion that Plaintiff's December 2018 conversation with Watanabe was too attenuated from when she was

---

[4] The Magistrate Judge explained that Plaintiff alleged that she raised the concerns regarding the musical in a second meeting with Watanabe in February 2019. (ECF No. 98 at 9 n.3.) However, Watanabe did not recall the meeting or hearing that Plaintiff had concerns over the musical. (*Id.*) Because Watanabe was not the decisionmaker and was not involved in the decision not to renew Plaintiff's contract, the Magistrate Judge did not find these disputed facts to be material. (*Id.*)

The Court agrees with the Magistrate Judge that these disputed facts are not material, and therefore, the Court does not consider any alleged conversations with Watanabe about the musical in reviewing the recommendations concerning the retaliation claim.

notified of her nonrenewal in April 2019 to raise an inference of retaliation.  *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (three- and four-month delays between a protected activity and an adverse employment action are too long to raise an inference of retaliation).

And even more importantly, as Defendants point out in the Response, to prove the causal connection element of a retaliation claim, Plaintiff must show that her complaints to Watanabe were communicated to Thompson.  (ECF No. 106 at 7 (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188–89 (10th Cir. 2002) (holding there was no retaliation where alleged retaliator did not know about protected activity); *Wickman v. Henderson*, 19 Fed. Appx. 740, 742–44 (10th Cir. 2011) (actual knowledge is required for Title VII retaliation claims)).)  The Magistrate Judge found, and the Court agrees, that there is no evidence in the record that Thompson—who recommended Plaintiff's nonrenewal and provided the reference to APS—was aware of the conversation with Watanabe.  (ECF No. 98 at 27–28.)  In fact, the undisputed evidence demonstrates that Watanabe did not tell anyone about the conversation with Plaintiff—at her request—and that Thompson did not know about it.  (*See id.* at 9 (citing ECF No. 75-4 ¶ 10 and ECF No. 75-1 ¶ 17).)

For these same reasons, Plaintiff has failed to adduce evidence that Thompson's reference to APS was in retaliation for Plaintiff's comments to Watanabe.  Additionally, the undisputed evidence shows that Plaintiff admitted that Thompson told APS the truth.  (*See id.* at 28 (citing ECF No. 75-5 at 209:7–21 and ECF No. 85 at 19 (Thompson "accurately" told the school about Plaintiff's absences; Thompson also "accurately shared Shannon did not submit her required SLO goals for the year.")).)  There is no

evidence in the record to support Plaintiff's assertion that Thompson "maliciously and tortiously interfered" with her employment prospects with APS. (ECF No. 103 at 5.) The Magistrate Judge found, and the Court agrees, that Plaintiff admitted that she was absent for numerous days in the 2018–2019 school year, and that Thompson told APS that she was concerned about Plaintiff's absences. (ECF No. 98 at 28.)

Plaintiff appears to argue in the Objection that she filed in-house grievances and an EEOC charge, though she does not state the dates on which these events occurred. (ECF No. 103 at 6.) The Recommendation states that her charge of discrimination with the EEOC was filed April 10, 2019 (ECF No. 1 at 36–38), and that her internal grievance was filed on April 16, 2019 (ECF No. 85-15 at 1). She does not state specifically in the Objection that she objects to any conclusions in the Recommendation on this issue, so the Court cannot discern the precise nature of the objection here. (ECF No. 103 at 6.)

Regardless, to the extent that Plaintiff argues in the Objection that her nonrenewal occurred due to her EEOC charge (ECF No. 75 ¶ 52), filed April 10, 2019, and internal grievances[5] (ECF No. 75 ¶ 60), filed after the EEOC charge, the Court concludes that her assertion is completely without merit. (ECF No. 103 at 6.) As Defendants point out, Plaintiff was notified of the nonrenewal recommendation on April 5, 2019, *before* she filed the EEOC charge and grievances. As a result, Defendants could not have retaliated against Plaintiff before she filed the EEOC charge or the

---

[5] Plaintiff filed a second internal grievance against Thompson on July 3, 2019, claiming Thompson provided a negative reference to APS in retaliation for Plaintiff's protected activity. (ECF No. 98 at 17.) The second grievance also is of no moment in connection with Plaintiff's retaliation claim, as it was filed long after Plaintiff was notified of her nonrenewal and after the Board approved the nonrenewal.

internal grievance.[6]  The Court therefore overrules the Objection as to Plaintiff's retaliation claims.

### G.     Section 1981 Claims

Plaintiff also failed to object to the portion of the Recommendation which recommends that the Court grant Defendants summary judgment on Plaintiff's Section 1981 claims because Plaintiff failed to prove the allegations of her underlying claims. (*See* ECF No. 103; ECF No. 106 at 9–10.)  The Court sees no clear error in the Magistrate Judge's reasoning.  (ECF No. 98 at 28–29.)

Because the Court agrees with the Magistrate Judge's recommendations that Defendants are entitled to summary judgment on the underlying claims, it adopts that portion of the Recommendation which recommends they are entitled to summary judgment on her Section 1981 claims.  (*See id.*)

### H.     *Monell* Claims

Plaintiff also did not specifically address the Magistrate Judge's recommendation that the Court grant summary judgment in Defendants' favor on Plaintiff's *Monell* claim against the District.  (*See* ECF No. 103.)  Seeing no clear error in the Magistrate Judge's reasoning, the Court adopts the Magistrate Judge's recommendation that the Court grant summary judgment in the District's favor on Plaintiff's *Monell* claim.

### I.     State Law Claims

Once again, Plaintiff did not specifically address the Magistrate Judge's recommendation that the Court decline to exercise supplemental jurisdiction over her

---

[6] The Court notes that the Board approved the nonrenewal recommendation on May 2, 2019, after the EEOC charge and first internal grievance.  (ECF No. 98 at 17.)  But the critical date is April 5, 2019, when Plaintiff was *notified* of the nonrenewal.  (*Id.* at 15.)

state law claims. (*See* ECF No. 103; ECF No. 106 at 10.) Given that the Court has adopted all of the Magistrate Judge's recommendations concerning Plaintiff's federal claims, it also agrees that the proper approach going forward is to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objection (ECF No. 103) is OVERRULED;

2. The Report and Recommendation (ECF No. 98) is ADOPTED in its entirety;

3. Defendants' Motion for Summary Judgment (ECF No. 75) is GRANTED;

4. The Clerk shall enter judgment in favor of Defendants and against Plaintiff;

5. Each party shall bear their own attorney fees and costs; and

6. The Clerk shall terminate this action.

Dated this 21st day of September, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[7] Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court need not address the merits of Defendants' arguments concerning those claims.